# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| CHARLES VAN MORGAN, ) | |
| ) | Case No. 3:19-cv-122 |
| *Plaintiff*, ) | |
| ) | Judge Travis R. McDonough |
| v. ) | |
| ) | Magistrate Judge H. Bruce Guyton |
| WILLIAM M. BARKER, MARGARET L. ) | |
| BEHM, WILLIAM L. HARBISON, ) | |
| JEFFREY M. WARD, and BARBARA M. ) | |
| ZOCCOLA, in their official and individual ) | |
| capacities, ) | |
| ) | |
| *Defendants*. ) | |

## MEMORANDUM OPINION

Before the Court is Defendants William M. Barker, Margaret L. Behm, William L. Harbison, Jeffrey M. Ward, and Barbara M. Zoccola's motion to dismiss all of Plaintiff Charles Van Morgan's claims against them in their official and individual capacities under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction or, alternatively, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted (Doc. 13). Defendants compose the Tennessee Board of Law Examiners (the "Board"), and this action arises from the Board's denial of Plaintiff's application to the State of Tennessee Bar. (*Id.* at 1.) Because the Court lacks subject-matter jurisdiction over Plaintiffs' claims, Defendants' motion to dismiss (Doc. 13) will be **GRANTED**, and all claims will be **DISMISSED WITHOUT PREJUDICE**.

### I. BACKGROUND

The following facts alleged in Plaintiff's amended complaint (Doc. 10) will be accepted as true for the purposes of this motion. On February 14, 2019, after a hearing, the Board denied

Plaintiff's application for a license to practice law in the State of Tennessee. (Doc. 10, at 7–8.) Plaintiff recounts that, on the day of his hearing, "much younger applicants were heard first[,]" while he was heard last. (*Id.* at 8.) There was an armed trooper in the room at his hearing but "not in any other confidential hearings." (*Id.*) During his hearing, he was "not allowed to answer all accusations brought inflammatory [sic] by board members . . . ." (*Id.*)

The Board's stated reasons for denying his application included that Plaintiff "had not adequately informed [his] law school and the [B]oard of [his] termination from the highway patrol." (*Id.* at 7.) According to Plaintiff, he was "wrongly fired" for a pursuit of a suspect, and the Board used that pursuit and ensuing termination as evidence of "bad conduct" even though federal civil lawsuits arising from the pursuit were decided in his favor. (*Id.*) Plaintiff complains that the Board relied instead on the outcome of his administrative case against the Tennessee Highway Patrol. (*Id.*) In that case, according to Plaintiff, "[t]he Tennessee courts . . . excluded expert testimony both sides agreed [was] needed to decide the case." (*Id.* at 5.) Plaintiff further alleges that an administrative judge "ruled without proof that [he] was not credible and the [Board] allowed this finding in their decision contrary to Tennessee case law." (*Id.*)

Plaintiff alleges that the Board denied him a law license while granting licenses to "much younger applicants with criminal convictions and a former state trooper in similar but far worse circumstances." (*Id.* at 7–8.) According to Plaintiff, the Board consists of "members of the profession who are not supervised by another state agency[,]" and the child of at least one of the board members is also a lawyer. (*Id.*)

On April 2, 2019, Plaintiff filed a petition for writ of certiorari in the Tennessee Supreme Court, seeking review of the Board's denial of his application for admission to the Tennessee bar pursuant to Section 14.01 of Rule 7 of the Supreme Court of the State of Tennessee. (Doc. 14-

4.) Plaintiff filed his original complaint in this Court on April 15, 2019. (Doc. 1.) The Tennessee Supreme Court reviewed Plaintiff's petition, concluded Plaintiff had "not shown grounds for relief[,]" and denied the petition on June 20, 2019. (Doc. 14-6.)

Plaintiff filed his amended complaint on August 1, 2019. (Doc. 10.) In his amended complaint, he asserts the following claims against Defendants, all of which arise from the Board's denial of his application to the Tennessee bar: (1) violation of his due-process rights under the Fourteenth Amendment to the United States Constitution; (2) violation of the Supremacy Clause of the United States Constitution; (3) violation of the Equal Protection Clause of the Fourteenth Amendment; (4) conspiracy in restraint of trade or commerce among the several states in violation of the Sherman Act, 15 U.S.C. § 1; and (5) age-based discrimination in violation of the Age Discrimination in Employment Act of 1967. (Doc. 10, at 5, 7–8.) Plaintiff seeks treble damages and an injunction "requiring the [B]oard to not use 601(a) termination from [the Tennessee Highway Patrol ("THP")] or reporting of it on the application to the BAR [sic] to exclude me from my Tennessee law license or any new finding not already listed." (*Id.* at 6.) On August 8, 2019, Defendants filed their motion to dismiss (Doc. 13), and that motion is now ripe for the Court's review.

**II.     STANDARD OF REVIEW**

A complaint may be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), a motion to dismiss for lack of subject matter jurisdiction "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). "A facial attack is a challenge to the sufficiency of the pleading itself[,]" and "the court must take the material allegations of the petition as true and construed in the light most favorable to

the nonmoving party." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235–37 (1974)). "A factual attack, on the other hand, is . . . a challenge to the factual existence of subject matter jurisdiction." *Id.* In the context of a factual attack, "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (citation omitted). In reviewing factual motions, "a trial court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Plaintiff bears the burden of proving jurisdiction exists. *Golden*, 410 F.3d at 881; *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

## III. ANALYSIS

As set forth below, the Court lacks subject-matter jurisdiction over Plaintiff's claims due to the doctrines of sovereign immunity, *Rooker-Feldman*, and quasi-judicial immunity.

### A. Official-Capacity Claims

#### i. *Sovereign Immunity*

Defendants assert that they are immune in their official capacities from Plaintiff's claims for damages because the Board is an arm of the judicial branch of the government of Tennessee. (Doc. 14, at 4.) As a jurisdictional matter, sovereign immunity "must be addressed prior to reaching the merits." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1045–46 (6th Cir. 2015).

##### a. Damages

The Eleventh Amendment to the United States Constitution, in its recognition of the doctrine of sovereign immunity, bars federal courts from adjudicating suits brought by private individuals seeking damages against states, in the absence of waiver or congressional override.

4

*Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54 (1996); *Hafer v. Melo*, 502 U.S. 21, 28–29 (1991). The State of Tennessee has neither waived its immunity to this suit nor to suits under 42 U.S.C. § 1983 generally, *see Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986), and Congress has not abrogated Tennessee's immunity, *see Quern v. Jordan*, 440 U.S. 332, 345 (1979). Sovereign immunity also bars suits for damages against state officials in their official capacities because "individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Because the Board was created by Section 23-1-101 of the Tennessee Code and Tennessee Supreme Court Rule 7 and is an agent of the Tennessee Supreme Court, a suit against members of the Board in their official capacities is a suit against the State of Tennessee. *See, e.g.*, *Moncier v. Jones*, 557 F. App'x 407, 409 (6th Cir. 2014) (finding that the Chief Disciplinary Counsel for the Tennessee Board of Professional Responsibility was a state official and, thus, claims for damages against her in her official capacity were barred by the Eleventh Amendment). Therefore, this Court lacks subject-matter jurisdiction over Plaintiff's claims for damages against Defendants in their official capacities.

          b.        Prospective Injunctive Relief

Sovereign immunity's bar to suits for damages in federal courts also includes suits for retroactive injunctive relief. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 509 (6th Cir. 2008) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 103 (1984)). Relief is retrospective, and therefore barred by sovereign immunity, if "it is tantamount to an award of damages for a past violation of federal law . . . ." *Papasan v. Allain,* 478 U.S. 265, 278 (1986). However, suits for prospective injunctive relief, known as *Ex Parte Young* suits, provide an

exception to a State's sovereign immunity and may be brought against state officials in their official capacity "to end a continuing violation of federal law." *Price v. Medicaid Dir.*, 838 F.3d 739, 746–47 (6th Cir. 2016) (citing *Ex parte Young*, 209 U.S. 123, 159 (1908)); *see also Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013). Prospective injunctive relief can involve the reversal of a past administrative ruling. *See, e.g.*, *Carten v. Kent State University*, 282 F.3d 391, 396 (6th Cir. 2002) (rejecting the defendants' argument that "reversal of a completed state decision" to expel a student was retrospective); *see also Durham v. Martin*, 388 F. Supp. 3d 919, 937 (M.D. Tenn. 2019) ("The request that the plaintiff's right to a state pension and state-provided healthcare be reinstated and that he maintain those benefits going forward seeks prospective relief . . . .").

The gravamen of Plaintiff's complaint is that the manner in which the Board evaluated and adjudicated his application for a law license violated federal law. He asks the Court to enjoin the Board from considering his termination from the THP or his reporting of it when reviewing his application for a license to practice law in Tennessee. (Doc. 10, at 6.) Therefore, it appears that Plaintiff's claim for injunctive relief may constitute an *Ex parte Young* claim.

    *ii.*    **Rooker-Feldman**

However, the Court need not decide, because the Court lacks jurisdiction over such a claim under the *Rooker-Feldman* doctrine. The United States Supreme Court is vested, under 28 U.S.C. § 1257, with exclusive jurisdiction over appeals from final state-court judgments. *Lance v. Dennis*, 546 U.S. 459, 463 (2006). Accordingly, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Id.* Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over claims that are "inextricably intertwined" with a state court's decision. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462,

486–87 (1983) (citing 28 U.S.C. § 1257); *see also Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

The *Feldman* plaintiffs challenged the District of Columbia Court of Appeals's denial of their requests for waivers of a bar-admission rule. 460 U.S. at 463. The Supreme Court held that the federal district court had jurisdiction over a general challenge to the bar-admission rule's constitutionality because it did not require direct review of a state-court decision, but the district court lacked jurisdiction over claims that the state had unlawfully denied their particular petitions because those claims were "inextricably intertwined" with the state-court decisions. *Id.* at 485–86. "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998). "The *Rooker–Feldman* doctrine includes cases brought under 42 U.S.C. § 1983 because of the 'full faith and credit' given to state judicial proceedings." *VanWulfen v. Montmorency Cty.*, 345 F. Supp. 2d 730, 741 (E.D. Mich. 2004) (quoting *Gottfried v. Med. Planning Servs., Inc.,* 142 F.3d 326, 330 (6th Cir.1998)).

However, the *Rooker-Feldman* doctrine does not apply when there is parallel state and federal litigation, even if the state court enters judgment while the case is still pending in the federal court. As the United States Supreme Court explained in *Exxon-Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), "neither *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court." *Id.* at 292.

The relief Plaintiff requests would require this Court to review the Tennessee Supreme Court's denial of his petition for a writ of certiorari, a final state-court adjudication. (*See* Doc.

14-6 (concluding that Plaintiff had "not shown grounds for relief").) Here, like the plaintiffs in *Feldman*, Plaintiff does not appear to challenge any particular state law or Board policy but rather the Board's treatment of his application alone. His grievance is that the Board violated his particular constitutional rights, not that the Board applies unconstitutional bar-admission rules. The *Rooker-Feldman* doctrine, thus, applies to the type of challenge Plaintiff brings.

However, there is still a question whether the doctrine applies here, since Plaintiff filed his case in this Court when his petition was still pending before the Tennessee Supreme Court. Plaintiff asserts that the *Rooker-Feldman* doctrine does not apply here, because "[t]his present case was filed before any State court decision and there are independent claims." (Doc. 15, at 12.) But, the "properly invoked concurrent jurisdiction" scenario discussed in *Exxon-Mobil*, 544 U.S. at 292, is absent here. On April 15, 2019, when Plaintiff filed this action, his claims were not ripe, as there was still the possibility that the Tennessee Supreme Court would grant him relief. "If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Bigelow v. Mich. Dep't of Natural Resources,* 970 F.2d 154, 157 (6th Cir.1992) (internal citations and quotation marks omitted). The Court lacked subject-matter jurisdiction while Plaintiff's petition was pending before the Tennessee Supreme Court because his claims did not become ripe until the Tennessee Supreme Court denied his petition.

In sum, the *Rooker-Feldman* doctrine applies here because Plaintiffs' claims constitute an appeal of the Tennessee Supreme Court's final state-court adjudication, over which the United States Supreme Court enjoys exclusive jurisdiction. *See* 28 U.S.C. § 1257. Thus, even if Plaintiff's claim is for prospective relief within the *Ex Parte Young* exception, this Court nonetheless lacks jurisdiction to entertain it. Accordingly, Plaintiff's official-capacity claims

will be **DISMISSED WITHOUT PREJUDICE** pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.

### B. Individual-Capacity Claims

Defendants argue that Plaintiff's claims against them in their individual capacities are subject to dismissal under the doctrine of quasi-judicial immunity. (Doc. 14, at 5.) First recognized by the United States Supreme Court in 1871, the doctrine of judicial immunity has protected judges from personal liability for acts taken within their judicial roles since at least 1608. *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967); *Bradley v. Fisher*, 80 U.S. 335, 347–48 (1871). It is based on the "general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley*, 80 U.S. at 347. Otherwise, "[l]iability to answer to every one who might feel himself aggrieved . . . would destroy that independence without which no judiciary can be either respectable or useful." *Id.*

The doctrine of quasi-judicial immunity has developed since, further extending absolute immunity "to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). But entitlement to absolute immunity depends on "the nature of the function performed, not the identity of the actor who performed it . . . ." *Forrester v. White*, 484 U.S. 219, 224. An official wishing to invoke absolute immunity must show "that such immunity is justified for the governmental function at issue[,]" *Hafer*, 502 U.S. at 29, and "by overriding considerations of public policy." *Forrester*, 484 U.S. at 224.

9

In *Moncier v. Jones*, the Tennessee Supreme Court temporarily suspended an attorney's law license. 557 F. App'x at 408. The attorney sued the former Chief Disciplinary Counsel for the Tennessee Board of Professional Responsibility, alleging that she had violated his constitutional rights under the United States Constitution. *Id.* The Sixth Circuit affirmed the district court's holding that the Chief Disciplinary Counsel was entitled to absolute, quasi-judicial immunity from suits for damages in her individual capacity. *Id.* at 409. Similarly, in *Quatkemeyer v. Kentucky Board of Medical Licensure*, 506 F. App'x 342 (6th Cir. 2012), the Sixth Circuit held that members of the Kentucky Board of Medical Licensures "exercise[d] the requisite adjudicatory functioning for quasi-judicial immunity" when they "exercise[d] authority over medical practitioners in Kentucky and ha[d] authority to issue subpoenas, conduct various levels of inquiries, make findings and issue different orders." *Id.* at 346.

Here, Defendants' responsibilities as Board members are, like the responsibilities of the defendants in *Moncier* and *Quatkemeyer*, clearly adjudicatory in nature. When the Board considered Plaintiff's bar application and presided over his show-cause hearing, the members were performing an adjudicatory function which, in the absence of immunity, would expose them to lawsuits by each applicant whose application they denied and would undermine their ability to perform their duties. *See Forrester*, 484 U.S. at 223–24. Quasi-judicial immunity is appropriate to the Board's function and is necessary here to allow the Board to function unharassed.

The Court finds that Defendants are entitled to absolute, quasi-judicial immunity from Plaintiff's claims for damages. And with respect to any claims for equitable relief Plaintiff asserts against the Board members in their individual capacities, the *Rooker-Feldman* doctrine again applies to bar this Court's jurisdiction. Therefore, all of Plaintiff's individual-capacity

10

claims will be **DISMISSED WITHOUT PREJUDICE** pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. The Court will not, therefore, consider Defendants' additional arguments that they are entitled to qualified immunity and that Plaintiff's claims are also subject to dismissal for failure to state a claim. (*See generally* Doc. 14.)

IV. **CONCLUSION**

Defendants' motion to dismiss for lack of subject-matter jurisdiction (Doc. 13) is **GRANTED**. All claims are hereby **DISMISSED WITHOUT PREJUDICE**.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**